656 So.2d 489 (1995)
David JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 93-3248.
District Court of Appeal of Florida, Fourth District.
February 1, 1995.
Rehearing, Rehearing and Certification Denied July 21, 1995.
Richard L. Jorandby, Public Defender, and Louis G. Carres, Asst. Public Defender, West Palm Beach, for appellant.
*490 Robert A. Butterworth, Atty. Gen., Tallahassee, and James J. Carney, Asst. Atty. Gen., West Palm Beach, for appellee.
Rehearing, Rehearing En Banc and Certification Denied July 21, 1995.
POLEN, Judge.
David Jones timely appeals his judgment and sentence, after a jury trial convicting him of attempted burglary of a conveyance and resisting an officer without violence. Jones's arrest, and subsequent conviction, arose out of a confrontation with two Fort Lauderdale police officers who, in full uniform, while patrolling in a marked police car, observed the defendant sitting on a bicycle, trying the handle of a car door. When the officers approached, Jones hit Officer Donisi in the chest, jumped off his bicycle, and ran. A chase ensued, after which Jones was apprehended with the aid of a K9 dog, and arrested. This two-point appeal arose out of the trial judge's having given, at trial, extemporaneous instructions as to what constitutes "reasonable doubt," and his improper response to a juror's question, at the close of jury instructions, as to why they had not heard anything about the defendant's background. We reverse on both points.
The trial court gave extemporaneous instructions to the jury prior to commencement of the evidentiary portions of the proceedings. Those instructions included a segment where the "cardinal rules" were explained to the jury as to how the proceedings should be conducted on the jury's part. The third of those "cardinal rules" was that the jury should not demand proof beyond all doubt or complete certainty before finding appellant guilty. The relevant portion of the court's pretrial extemporaneous instructions were as follows:
Now, the third cardinal rule is that in order for you the jury to find the Defendant guilty you must be satisfied, the State must convince you beyond and to the exclusion of every reasonable doubt that the Defendant is guilty.
That's what is known as the standard of proof, and that's a landmark concept. That's a bedrock foundation of our American Criminal jurisprudence system. That anytime any jury anywhere in the United States of America, no matter what the charge is the State must demonstrate to the jury and satisfy to the jury beyond and to the exclusion of every reasonable doubt of the Defendant's guilt.
Now, I'll give you a more elaborate definition of what that phrase and concept means. The phrase beyond and to the exclusion of every reasonable doubt means suffice it to say it's a very heavy burden that the State shoulders. Whenever charging somebody with committing a crime in order to secure conviction from the jury.
But even though it's a very heavy burden the State does not, I repeat, stress, emphasize, the State does not have to convince you the jury to an absolute certainty of the Defendant's guilt. You do not have to be one hundred percent certain of the Defendant's guilt in order to find the Defendant guilty.
The point I'm trying to make is you can still have a doubt as to the Defendant's guilt and still find him guilty so long as it's not a reasonable doubt. A reasonable doubt simply stated is a doubt you can attach a reason to. If you have a doubt you can attach a reason to that's a reasonable doubt and you must find the Defendant not guilty. But if the only kind of doubt you have as to the Defendant's guilt is a possible doubt, a speculative doubt, an imaginary doubt, a forced doubt, that's not a reasonable doubt. And if all the elements of the crime have been proven to you then you must find the Defendant guilty (emphasis added).
In the instant case, we agree with the appellant that the indispensable reasonable doubt standard, a component of due process of law in criminal proceedings was abridged by the trial judge's statement that certitude was not required. In fact, the instruction was tantamount to telling the jury that it could base a guilty verdict on a probability of guilt as long as it was remarkably strong probability. This kind of minimization of the reasonable doubt standard violates the due process clause of the federal and state constitutions. See Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), wherein the Supreme Court deemed unacceptable a trial court's instruction that reasonable doubt "must be such doubt as would give rise to a *491 grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof."
At bar, we find that this minimization of the reasonable doubt standard constituted fundamental error as it deprived the appellant of his defense, the reliance on the reasonable doubt standard. In arriving at this conclusion, we specifically distinguish the case at bar from the holding in Freeman v. State, 576 So.2d 415, 416 (Fla. 3d DCA 1991). In Freeman, the court held that a complaint with the reasonable doubt instruction was not preserved and did not amount to fundamental error. The court based its conclusion (that the jury instruction did not rise to the level of fundamental error) on the balancing effect of the court's having also given extensive and proper jury instructions on reasonable doubt and presumption of innocence. Id. at 416.
At bar, the trial judge's instructions were accurate as far as they went. However, the difficulty arises from the lack of completeness. The failure of the trial judge to give proper balancing instructions constitutes reversible error despite the fact that the appellant did not preserve the issue. Failure to give a complete and accurate instruction is fundamental error, reviewable in the complete absence of a request or objection. See Carter v. State, 469 So.2d 194 (Fla. 2d DCA 1985).
We also agree with the appellant, pertaining to Point II of his appeal, that it was reversible error for the trial judge to have impermissibly made an extemporaneous comment in addition to the standard jury instructions. In response to a juror's inquiry as to why nothing had been presented as to the background of the defendant, in terms of prior arrests or education, the trial judge's exact comment was:
[THE COURT]: Well, that type of information doesn't come out at all unless the Defendant takes the witness stand and testifies and then you learn a little more about the Defendant. But he didn't have to testify and no one could hold it against him because he didn't testify.
In Kelley v. State, 486 So.2d 578, 584 (Fla. 1986), the court cautioned against deviating from the standard jury instructions, since a trial judge "walks a fine line indeed upon deciding to depart" from them as "the risk is too great that an imprudent instruction" may jeopardize "the conscientious conduct of an otherwise entirely fair trial." In the instant case, the above-quoted response from the trial judge, in response to the jury question, appeared, however unintentionally, to link failure to testify with keeping bad evidence from the jury, something that appellant immediately objected to after the damage had been done. We hold that the trial court's subsequent efforts to rectify the negative impact were insufficient. The trial judge's subsequent "curative" instruction that there was "nothing else before you" and that they "know nothing about the defendant" merely increased the potential inference that this was due to appellant's decision not to testify. At bar, we note that the defendant did request a curative instruction. However, even in the absence of such a request, the trial judge's comments, alone, would have been sufficiently damaging to constitute reversible error. Thus, we reverse and remand for a new trial on this ground.
STONE, J., and DONNER, AMY STEELE, Associate Judge, concur.