671 So.2d 186 (1996)
Kenneth M. PIERCE, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 93-1302.
District Court of Appeal of Florida, Fourth District.
March 13, 1996.
Rehearing and Certification of Question Denied April 24, 1996.
*187 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant/cross-appellee.
Robert A. Butterworth, Attorney General, Tallahassee, Joan Fowler, Senior Assistant Attorney General, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee/cross-appellant.
BROWN, Associate Judge.
On March 9, 1993, a jury found Appellant guilty of vehicular homicide/leaving the scene of an accident involving death of a six year old child; leaving the scene of an accident involving injury to two other children; driving while his license was suspended or revoked and causing death; and two counts of tampering with physical evidence, by removing a camper top from, and by altering front-end damage to, a pickup truck. Appellant was sentenced to a total of sixty years in prison, thirty years of which related to the vehicular homicide count. During the trial, a computer generated animation, illustrating the lead traffic homicide investigator's reconstruction of the motor vehicle accident, was published to the jury as a demonstrative exhibit. The admissibility of this exhibit presents us with an issue addressed by no appellate court in Florida, and by few in other jurisdictions. For reasons set forth below, we find the trial court did not abuse its discretion in permitting the jury to view the computer generated accident reconstruction animation. On other grounds, however, we reverse and remand for a new trial based on fundamental error.

FACTS
On the evening of June 23, 1992, three children were walking home through a residential neighborhood in Dania, Florida. At approximately 9:00 p.m., a pickup truck hit the three children. The six year old child later died as a result, and the two older children were both seriously injured. Eyewitnesses reported that the same vehicle had collided with some garbage cans earlier that evening, shortly before 9:00 p.m., dragging a can fifteen to twenty feet without swerving. The vehicle fled both scenes without stopping.
One eyewitness chased the vehicle and believed it to be a Silverado Chevrolet truck. Other eyewitnesses gave similar descriptions of the vehicle as a pickup truck with a camper top, darker in color on the bottom than on the top.
When the police arrived, a neighbor found a piece of grille from a vehicle in a shallow section of a water puddle close to the six year old child's body. A piece of plastic turn signal lens was also found at the scene. In addition, the medical examiner suggested that there might be a dent in the vehicle caused by the impact on the six year old victim's head.
Approximately three weeks after the accident, the police located Appellant's truck, which had a dent where the hood meets the grille. At that time, the grille was not original equipment and the headlight lens cover had been cut to make it fit. Although the truck did not have a camper top, neighbors stated that Appellant had recently removed a camper top from the vehicle.
Based on an affidavit alleging the above facts, along with the identification of the grille piece found at the accident scene as belonging to a 1980 Silverado truck, a search warrant was issued and Appellant's truck was seized. Thereafter, Appellant was arrested and charged with vehicular homicide/leaving the scene of an accident involving death, as well as leaving the scene of an accident causing injury, driving with a suspended or revoked license and causing death, *188 and two counts of tampering with physical evidence.

BACKGROUND
Before trial, the State Attorney's Office filed a Notice of Intent to offer a computer generated animation of its expert's accident reconstruction. A pretrial hearing concerning admissibility was held in which the state presented three expert witnesses. Detective Bjorndale-Hull, an expert in accident reconstruction, testified that her use of metal tapes and a wheel was reasonably relied upon by accident reconstruction experts in the field. In addition, the AUTOCAD computer program Bjorndale-Hull used was established as accepted in the engineering field as one of the leading CAD (computer aided design) programs in the world. Finally, Detective Bjorndale-Hull's measurements were drawn directly onto a computer, such that they were input with no human contamination of her measurements.
Second, the state presented Detective Babcock, an accident reconstruction expert, who testified that the data he used was of a type reasonably relied upon by experts in the field of accident reconstruction in formulating opinions as to how motor vehicle accidents occur. Babcock supervised every aspect of the animation from inception. His testimony established that the computer animation fairly and accurately reflected his opinion of how the accident occurred. The computer animation was thus established to be a visualization of Babcock's opinion as to how the accident occurred.
The third witness presented by the state was Jack Suchocki, a computer animation expert, who explained that computer animation consists of individual pictures shown in a rapid sequence to indicate motion. He testified that the two-dimensional drawings entered directly onto AUTOCAD were then directly transferred into three-dimensional drawings, thus eliminating the possibility of human error in the translation. Suchocki testified the animation was a fair and accurate representation of what it purported to depict, and that the data, information, and evidence utilized was of a type reasonably relied upon by experts in the field of forensic animation.
The state then proffered the computer animation as a demonstrative exhibit to help Detective Babcock explain his opinion to the jury, and also as substantive evidence. The trial court ruled the computer animation admissible as a demonstrative exhibit only. As a preliminary fact, pursuant to section 90.105, Florida Statutes (1991), the trial court found that the original source data, the basis of the State's computer animation, was "reasonably trustworthy and reliable." Noting the issue to be one of first impression, the trial court determined that the proffered computer animation was "merely a device or means to express an expert's opinion." Additionally, the trial judge concluded that in this context the video exhibit was a new form of expression, not a scientific or experimental test (such as a DNA test or a blood spattering analysis) and therefore was not subject to the test of Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923). Thus, the animation was permitted to be used during the expert's testimony at trial for the purpose of aiding the jurors in understanding the complex issues, and to illustrate the opinions of the expert witness, Detective Babcock. However, because it was ruled inadmissible as substantive evidence, it was not permitted to be taken to the jury room during deliberations.

ANALYSIS

A) REASONABLE DOUBT INSTRUCTION
Initially, we reverse and remand for a new trial due to fundamental error created when the trial court minimized the reasonable doubt standard in its extemporaneous jury instruction, thus depriving Appellant of his defense. See Jones v. State, 656 So.2d 489 (Fla. 4th DCA 1995), rev. denied, 663 So.2d 632 (Fla.1995); see also McInnis v. State, 671 So.2d 803 (Fla. 4th DCA 1996); Poole v. State, No. 94-2731, ___ So.2d ___ [1996 WL 26958] (Fla. 4th DCA January 24, 1996); Variance v. State, No. 94-3019, ___ *189 So.2d ___ [1996 WL 1175] (Fla. 4th DCA January 3, 1996); Cifuentes v. State, 21 Fla. L. Weekly D77, ___ So.2d ___ [1996 WL 1117] (Fla. 4th DCA January 3, 1996); Wilson v. State, 668 So.2d 998 (Fla. 4th DCA 1995); Frazier v. State, 664 So.2d 985 (Fla. 4th DCA), rev. denied, No. 86,543, 666 So.2d 145 (Fla. Dec. 19, 1995); Rayfield v. State, 664 So.2d 6 (Fla. 4th DCA), rev. denied, 664 So.2d 249 (Fla.1995); Jones v. State, 657 So.2d 1178 (Fla. 4th DCA), reh'g granted, 662 So.2d 365 (Fla. 4th DCA), rev. denied, 664 So.2d 249 (Fla.1995). Exactly fact-similar to Jones, 656 So.2d 489, the trial judge in the instant case instructed the jury as follows:
And even though it's a very heavy burden however, the State does not, and I repeat, stress and emphasize, the State does not have to convince you to an absolute certainty of the Defendant's guilt.
You do not have to be one hundred percent satisfied the Defendant's guilty in order to find him guilty.... So the State does not have to convince you to 100 percent certainty of the Defendant's guilt but merely beyond and to the exclusion of every reasonable doubt.
As we found in Jones, we agree with Appellant that the reasonable doubt standard, a component of due process of law in criminal proceedings was diminished by the trial court's statement that certitude was not required. See Jones, 656 So.2d at 490. This kind of minimization of the reasonable doubt standard violates the due process clause of the federal and state constitutions. See Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Thus, this minimization of the reasonable doubt standard constituted fundamental error because it deprived Appellant of his defense, the reliance on the reasonable doubt standard. See Jones, 656 So.2d at 491. Accordingly, we reverse and remand for a new trial on this ground. Nevertheless, because we are faced with an issue of first impression for any court in this state, we write to address the dynamic aspect of computer animations as substantive and demonstrative evidence.

B) ADMISSION OF COMPUTER ANIMATION AS A DEMONSTRATIVE EXHIBIT
Computer animations have been used in the courtroom by civil litigators for reconstructing accidents, including automobile and truck accidents, aircraft collisions, construction equipment accidents, and industrial accidents, as well as in patent litigation. See "State v. Pierce: Will Florida Courts Ride the Wave of the Future and Allow Computer Animations in Criminal Trials?" 19 Nova L.Rev. 374 (1994) at Section II, citing David W. Muir, "Debunking the Myths about Computer Animation," Securities Litigation 1992 at 591, 596, 597 (PLI Litig. & Admin. Practice Course Handbook No. 444, 1992). As demonstrative aids to illustrate and explain testimony of witnesses to the fact finder, such exhibits have been useful. Computer animations have also been offered as substantive evidence to supply missing information for the purpose of proving a material fact in dispute. In this context, unlike the case at bar, the expert uses the computer not to illustrate the expert's opinion, but to perform calculations and obtain results which form the basis of the expert opinion. See generally, Kathleen M. O'Connor, "Computer Animations in the Courtroom: Get with the Program," 67 Fla. B.J. 20 (1993). Several cases have been decided in other jurisdictions that deal with the admissibility of computer animations as substantive scientific evidence. The Frye requirement that scientific evidence be admitted only if derived from principles and procedures that have achieved general acceptance in the scientific field to which they belong has been applied to such computer animations introduced as substantive evidence. See Starr v. Campos, 134 Ariz. 254, 655 P.2d 794 (Ariz.Ct.App.1982); see also Schaeffer v. General Motors Corp., 372 Mass. 171, 360 N.E.2d 1062 (1977).
Because the computer animation in the instant case was admitted solely as an illustration of Detective Babcock's opinion of how the accident occurred, we do not now decide the standards applicable to computer animations introduced as substantive evidence. The trial court, following a lengthy pretrial *190 hearing, determined that the demonstrative exhibit was not subject to the Frye analysis. We agree, and now turn to address the precise issue before us, whether the trial court abused its discretion in permitting the computer generated accident reconstruction animation to be shown to this jury as a demonstrative exhibit.
In one of the few reported cases addressing this issue, a New York trial court allowed a criminal defendant to introduce a computer animation to illustrate his expert's view of how a fatal crash occurred. Finding, as we have, the Frye test inapplicable, the court stated:
A Computer is not a gimmick and the court should not be shy about its use when proper. Computers are simply mechanical toolsreceiving information and acting on instructions at lightening speed. When the results are useful, they should be accepted, when confusing, they should be rejected. What is important is that the presentation should be relevant ..., that it fairly and accurately reflect the oral testimony offered and that it be an aid to the jury's understanding of the issue.
People of the State of New York v. Michael McHugh, 124 Misc.2d 559, 476 N.Y.S.2d 721, 722 (1984). Thus, in admitting the animation as a demonstrative exhibit only, the McHugh court merely required defense counsel to establish "the proper ground work and qualify the expert." Id.
In order to admit a demonstrative exhibit, illustrating an expert's opinion, such as a computer generated animation, the proponent must establish the foundation requirements necessary to introduce the expert opinion. Specifically, (1) the opinion evidence must be helpful to the trier of fact; (2) the witness must be qualified as an expert; (3) the opinion evidence must be applied to evidence offered at trial; and (4) pursuant to section 90.403, Florida Statutes (1991), the evidence, although technically relevant, must not present a substantial danger of unfair prejudice that outweighs its probative value. Kruse v. State, 483 So.2d 1383, 1384 (Fla. 4th DCA 1986).
In addition, the proponent must establish that the facts or data on which the expert relied in forming the opinion expressed by the computer animation are of a type reasonably relied upon by experts in the subject area. The facts or data need not themselves be admissible in evidence. § 90.704, Fla. Stat. (1991). The reasonableness of the expert's reliance upon the facts and data may be questioned in cross-examination. See First Fed. Sav. and Loan Ass'n v. Wylie, 46 So.2d 396, 400 (Fla.1950).
Finally, the computer animation must be a fair and accurate depiction of that which it purports to be. This is, of course, the same foundation which must be established to admit any pictorial representation, be it videotape, motion picture or photograph. Paramore v. State, 229 So.2d 855 (Fla.1969), vacated as to sentence only, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972)(videotape admission); Grant v. State, 171 So.2d 361 (Fla.1965), cert. denied, 384 U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966)(motion picture).
All preliminary facts, constituting the foundation for admissibility of evidence, must be proven to the court only by a preponderance of the evidence, even in a criminal case. Charles W. Ehrhardt, Florida Evidence, § 105.1 (1995 Ed.). In the case at bar, the trial court made appropriate findings of preliminary facts which were supported by the evidence adduced at the pretrial hearing. Detective Babcock was found to be qualified as an expert. His opinion as to how the accident occurred was in fact applied to evidence offered at trial, and the trial court found that the data relied on by the expert to form his opinion was of a type reasonably relied upon by experts in the field. Further, the trial court specifically found the computer animation tape was a fair and accurate depiction of the expert's opinion as to how the accident occurred, and found that the opinion, as well as the computer animation, would be helpful to the jury in understanding the issues in the case. Our review of the record has revealed no abuse of the trial court's discretion in these preliminary findings.
*191 Furthermore, our review of the computer animation videotape in the context of this record convinces us that the trial court appropriately exercised its discretion in its balancing analysis pursuant to section 90.403, Florida Statutes (1991). See Sims v. Brown, 574 So.2d 131, 133 (Fla.1991)(trial court has broad discretion in determining whether evidence should be admitted when there is a section 90.403 objection). Although evidence in this case indicated a bloody scene with screaming victims, the computer animation videotape demonstrated no blood and replicated no sound. Further, the mannequins used in the computer animation videotape depicted no facial expressions. Although some testimony indicated that the truck was traveling up to twice the posted speed limit, the videotape depicted the truck travelling at the posted speed limit.
Moreover, we find there was no undue emphasis placed upon the computer animation videotape, which was shown to the jury for a total of approximately six minutes in the course of an eleven day trial. The judge appropriately explained to the jury that the videotape was being used only to illustrate the expert's opinion. Cross-examination was permitted and the record demonstrates it was made clear to the jury that if the information entered into the computer was inaccurate, then the computer animation itself was inaccurate.
Accordingly, we find no error in the trial court's decision to permit the computer generated animation to be shown to the jury as a demonstrative exhibit illustrating Detective Babcock's reconstruction of the motor vehicle accident.

C) JURY INSTRUCTIONS CONCERNING KNOWLEDGE REQUIREMENT UNDER SECTION 316.027, FLORIDA STATUTES (1991)
Briefly, we advise that it would be prudent for the trial court to conform, upon remand, to the requirements of State v. Mancuso, 652 So.2d 370 (Fla.1995). The Florida Supreme Court has held that criminal liability under section 316.027, Florida Statutes (1991), requires proof that the driver charged with leaving the scene either knew of the resulting injury or death or reasonably should have known from the nature of the accident and that the jury should be so instructed. Id. at 372. Even though we have not found reversible error as to the specific instruction given below, we find the better approach would be for the trial court to more strictly comply with Mancuso upon remand.
All other issues raised are either affirmed or rendered moot by this opinion.
REVERSED AND REMANDED FOR NEW TRIAL.
STONE and WARNER, JJ., concur.