NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DON EARLE MORGAN, )
 )
        Appellant, )
 )
v. )    Case No. 2D14-5541
 )
STATE OF FLORIDA, )
 )
        Appellee. )
 )

Opinion filed March 9, 2016.

Appeal from the Circuit Court for
Highlands County; Anthony L. Ritenour,
Judge.

Howard L. Dimmig, II, Public Defender,
and Steven G. Mason, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Johnny T. Salgado,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

       Don Earle Morgan appeals his judgments and sentences for criminal

mischief and burglary of a dwelling.  See §§ 806.13(1)(a), (b)(2), 810.02(1)(b), (3), Fla.

Stat. (2013).  We reverse because the trial court's unusual discussion of the law during

jury selection and the error in the jury instructions require that Mr. Morgan receive a new trial.

## I. THE INCIDENT AT THE TRAILER

Mr. Morgan was very intoxicated on the evening of March 1, 2014. At approximately 11 p.m., beer can in hand, he banged on the back door of a mobile home in Highlands County. The mobile home was occupied at the time by a man and his wife and their son, daughter, and young granddaughter. The man went to the door, where Mr. Morgan was pleading: "I want some pills. I want some pills. I want some pills. I need some drugs, man." It is undisputed that this family did not sell drugs, legal or illegal. Why Mr. Morgan would have approached the home seeking drugs is not clear in the record, but as his lawyer suggested during argument to the jury, his advanced state of intoxication may be a partial explanation.

The man opened the back door and told Mr. Morgan to leave, explaining to Mr. Morgan that he did not even know him. The man closed and locked the door, but Mr. Morgan did not leave. He kept banging on the door. The man enlisted his son to help. They both opened the back door and had a conversation similar to the first conversation in which the son suggested that Mr. Morgan might have the wrong house. But Mr. Morgan continued to ask for pills and did not leave.

The man and his son then went out the front door of the mobile home onto a screened-in porch with two doors, one that led to the front yard and one to the backyard. They tried to push Mr. Morgan off the porch steps that led to the backyard, but he kept coming back onto the porch. At some point the son led Mr. Morgan off the porch and into the backyard, but Mr. Morgan apparently followed the son as he returned

to the mobile home. The man told his son to grab a wrench for protection. As he and his son attempted to close the front door to the trailer, Mr. Morgan managed to get his arm and a foot through the door so that it would not close.

At this point, a standoff occurred at the door. There can be no question that this standoff was very frightening for the entire family. All of the adult members of the family were pushing on the door from the inside to keep Mr. Morgan from entering. The man claimed that his family had six hundred pounds of body weight leaning against the door and trapping Mr. Morgan's foot and arm between the door and the jam. The family did not let up on this pressure, and Mr. Morgan could not escape from the doorway. Mr. Morgan was pushing from the outside either to gain entrance or to extract his arm and foot from the door. The son was striking Mr. Morgan's arm with the large wrench causing some level of injury to Mr. Morgan's arm. The front door to the trailer was bent in the process.

Fortunately, a deputy sheriff arrived while the struggle at the front door was in progress. He saw Mr. Morgan inside the screened porch with one arm and one leg in the door, screaming that he wanted a pill. The deputy tased Mr. Morgan three times and then arrested him. Somehow, in all of this, Mr. Morgan broke his ankle. The deputy took him to the hospital after initially transporting him to the jail. There is no evidence that the deputy located any pills, drugs, or paraphernalia during the search of Mr. Morgan incident to arrest. The State ultimately charged Mr. Morgan with criminal mischief for the damage to the door and with burglary of a dwelling.

## II.  VOIR DIRE

The information that charged Mr. Morgan with burglary of a dwelling, as is often the case, did not identify the offense that Mr. Morgan intended to commit "therein." It did not charge him with assault, battery, attempting to purchase illegal drugs, or theft. Thus, it is not surprising that the assistant state attorney chose to discuss the crime of burglary with the venire during jury selection.  He was attempting to dispel the common belief among jurors that burglary requires a theft and to explain how the facts of this case might constitute burglary even though Mr. Morgan did not actually get his entire body into the mobile home.  He tried to use a metaphor involving a BLT sandwich, and he was soon flailing in his efforts to establish his point with the venire.  Mr. Morgan's attorney finally suggested to the trial court that it simply read the standard instruction for burglary.

The trial court read the standard instruction, but it then embarked on its own discussion of burglary.  The transcript reflects the following:

> THE COURT:  I'll give you an example.  If someone goes up to a car, punches someone through the car window, it's actually burglary, as well as a battery, **because the burglary is the entering into the vehicle or the structure.**
>
> And then other charges can come from it.  There can be burglary and following the burglary then there could be what you guys keep thinking of, which the general public does, the theft.  So you can have burglary, theft, and you can then throw in the battery.  So if someone goes up to a car, punches someone who is sitting in their car at the stoplight, you can get burglary for entering the vehicle because their arm entered, you can get the battery because they hit them, and if they reached down and grabbed their wallet you can get theft.  Do you guys understand that?  Is that sufficient enough?
>
> [DEFENSE COUNSEL]:  Yes, sir.

THE COURT: There are a lot of little things that tell[] us that you can look at this or look at that, but the main elements I just read to you. And either one of them, if they want, can go into more of the elements to question you. I don't have a problem with that. I will read every bit of that to you at the end. **But people do constantly think that burglary is the stealing. It is not. It is the entering portion.**

(The panel answered in the affirmative.)

THE COURT: Okay. Go ahead, State.

(Emphasis added.)

This discussion may be a little more off-the-cuff than one might expect from a trial judge, and the emphasis on the "entering portion" while omitting the specific intent to commit an offense within the home is very troubling in this case.[1] However, we are not convinced that the trial court committed a fundamental error to this point. Jury selection continued, and the defense attorney also discussed the elements of burglary with the jury.

At the end of defense counsel's questioning, defense counsel asked the venire: "Now, with all that said, does anybody have any kinds of issues sitting in on this jury?" One venireperson spoke up, and the record reflects the following exchange:

VENIRE[PERSON]: I'm just a little curious, going by what you guys told us, is this worth all this, this crime that we're talking about here, somebody stuck their hand in a window or something?

[DEFENSE COUNSEL]: That's beyond my pay grade.

---

[1]In defense of the trial judge, at this point in the trial, he reasonably assumed that "entering" was going to be the featured issue during the trial. Only later did it become clear to the judge that "intent to commit an offense therein" was actually the featured issue.

- 5 -

VENIRE[PERSON]:  Okay.

[DEFENSE COUNSEL]:  Any other questions?  Thank you very much.

THE COURT:  Mr.—how do you pronounce it? Is it . . . ?

VENIRE[PERSON]:  Yes.

THE COURT:  Let me ask you this, is it worth it that there's a law that says you can't feed certain birds in the backyard?

VENIRE[PERSON]:  Now you're opening up another can of worms.

THE COURT:  Right.  And that's the point, that there are some laws that we don't think are worth it and some laws that we do.  But the element that I gave you or the scenario that I gave you about putting your arm in—and it's not what we're going to be here about today, I was just giving you a scenario.  Okay?

VENIRE[PERSON]:  Okay.

THE COURT:  **But if you took the whole scenario that I gave you, if you—let's say you pulled into the Publix parking lot and some thug walks up to the side of your car and pushes his hand through the window and hits you in the face and grabs your wallet, do you think it would be worth it then?**

VENIRE[PERSON]:  Absolutely.

THE COURT:  **Darn right.  And that's where you guys are going to fall in.  You're going to say was this worth it and did the facts amount to whatever he's going to say.  That's what you're going to decide.**  Okay?  Any questions based on that?

(Emphasis added.)

- 6 -

The "golden rule" discussion by the court about "you" being attacked by a "thug" is clearly a discussion the trial court should not have had with a member of the venire. But far more troubling is that the court stated to the venire: "Darn right. And that's where you guys are going to fall in. You're going to say was this worth it and did the facts amount to whatever he's going to say. That's what you're going to decide." Simply put, the jury was not supposed to decide in this case whether the trial by jury was "worth it" or whether "the facts amount[ed] to whatever he[]," i.e., the assistant state attorney, was "going to say."

During closing argument, in explaining how the State had proved the charge of burglary of a dwelling, the assistant state attorney reminded the jury of the explanation of burglary by the judge at the beginning of the trial. Mr. Morgan admits that his counsel did not object to the court's insertion of itself into these matters but argues that the cumulative effect of all of this is fundamental error.

In this case, the judge's extensive comments during voir dire included an inadequate legal explanation of burglary, a golden rule argument that any judge would have prohibited a lawyer from making, and an improper explanation that the jury's job was to determine whether prosecuting the case was "worth it" and whether "the facts amount[ed] to whatever" the prosecutor was going to say. Especially in the context of this case with all of its other problems, "the public's confidence in the judicial process would be seriously undermined" if we were to affirm these judgments. See Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010, 1032-33 (Fla. 2000) (Pariente, J., concurring); Dukes v. State, 356 So. 2d 873, 874 (Fla. 4th DCA 1978) (reversing for fundamental error when multiple errors "destroy[ed] the essential fairness of a criminal trial").

Improper comments by a trial judge during voir dire can result in fundamental error. See Gibbs v. State, 193 So. 2d 460 (Fla. 2d DCA 1967) (concluding that improper comments made by the court during voir dire, in conjunction with other trial errors, constituted fundamental error); Kozakoff v. State, 323 So. 2d 28 (Fla. 4th DCA 1975) (reversing for a new trial because the judge made extensive, informal comments during voir dire that may have led the jury to believe that it must reach a verdict); see also Jones v. State, 656 So. 2d 489 (Fla. 4th DCA 1995) (concluding that improper comments made by the court during instructions before the evidentiary portion of the trial relating to the burden of proof constituted fundamental error).

We recognize that an "[a]ppellate [c]ourt should exercise its discretion under the doctrine of fundamental error very guardedly" and that the error should go "to the foundation of the case" or "to the merits of the cause of action." See Sanford v. Rubin, 237 So. 2d 134, 137 (Fla. 1970); see also Daniels v. State, 121 So. 3d 409, 417-18 (Fla. 2013). But after a full and careful review of the entire record, and especially in light of the following error within the jury instructions, we are convinced that the trial court's improper participation in voir dire reached that level in this case.

### III. THE JURY INSTRUCTIONS ON BURGLARY AND THE ISSUE OF THE INTENDED OFFENSE

Further, we reverse because the special instruction given to the jury for burglary was error. Simply stated, the instructions in this case should have been more carefully considered. It was a close question whether the State's evidence established burglary in this case, and the facts were unusual. Thus, there arguably was a greater need for good jury instructions in this case. Mr. Morgan's advanced level of intoxication

- 8 -

probably made adequate instructions more important as well. But the modified instructions given made matters worse.

Voluntary intoxication, of course, is not a defense to the crime of burglary. § 775.051, Fla. Stat. (2013); see also Rudolf v. State, 851 So. 2d 839, 843 (Fla. 2d DCA 2003) (explaining that in Florida voluntary intoxication used to be a defense to specific intent crimes but that the defense was abrogated in 1999 by the passage of section 775.051). Section 775.051 does not, however, eliminate any element of the offense of burglary. The State in this case was required to prove that Mr. Morgan entered the porch or the mobile home with the specific intent to commit an offense therein. See § 810.02(1)(a). Evaluating whether Mr. Morgan entered with such an intent is difficult for a judge or a jury to analyze because the entire event seems fueled by Mr. Morgan's voluntarily altered mental state. A typical person, even one with criminal intent, would not be expected to engage in the bizarre behavior exhibited by Mr. Morgan. We do not say this to excuse or justify his behavior but to explain that this case was an unusual charge of burglary. Trying this case to a jury was going to be a challenge for the State. A jury could have accepted defense counsel's concession during his opening statement and closing argument that Mr. Morgan was guilty of the lesser offense of trespass but not of burglary. That is why the jury in this case needed a full and accurate instruction on the elements of the offense of burglary. This need was even greater due to the earlier ad lib discussions by the trial court during voir dire.

Over defense counsel's objections, the court modified the standard instruction and added the highlighted portion in the following excerpt of the trial transcript:

To prove the crime of burglary the State must prove the following two elements beyond a reasonable doubt:

1. The defendant entered a structure owned by or in the possession of [the victims].

2. At the time of entering the structure, the defendant had the intent to commit an offense other than burglary or trespass in that structure.

. . . .

The intent with which an act is done is an operation of the mind and therefore it is not always capable of direct and positive pro[o]f. It may be established by circumstantial evidence, like any other fact in the case. **The State need not prove the defendant's intent to commit a specified offense. Proof of intent to commit any offense will suffice.**

Even though an unlawful entering or remaining in a structure or conveyance is proved, if the evidence does not establish that it was done with the intent to commit criminal mischief or an offense other than burglary or trespass, the defendant must be found not guilty of burglary.

The trial court then provided a definition of "structure," followed by the instructions explaining the elements of assault and battery.[2]

It is not clear from the record why the State believed that the standard instruction for burglary was inadequate, and the trial court did not make any such finding, which it was required to do when it modified the standard instruction. See Fla. R. Crim. P. 3.985. During closing argument, the State argued that "[p]roof of intent to commit any offense" when Mr. Morgan trespassed would "suffice" to prove burglary. The State went through the possible intended offenses, arguing that the offense could

---

[2]Defense counsel objected to giving the special instruction on intent, the instruction for battery, and the instruction for assault.

- 10 -

be criminal mischief, battery, assault, theft, or some sort of drug offense. The jury was instructed on the elements of criminal mischief, battery, and assault but not on theft or any drug offense. Given that either theft or a possible drug offense was the State's best theory as to Mr. Morgan's intent upon entering the dwelling, this approach to the instructions is very troubling.

It is well settled that the State is not required to specify the intended offense for burglary in its charging document and that a charging document tracking the language of the burglary statute will generally be sufficient. See State v. Waters, 436 So. 2d 66, 68 (Fla. 1983). The standard instruction for burglary provides two options for the instruction on the intended offense. As of 2013, the first option, which seems to be the preferred approach, specifies the intended offense.[3] The second option still allows the jury to be instructed without specifying the intended offense. That option provides: "At the time of entering the structure, the defendant had the intent to commit an offense other than burglary or trespass in that structure." Fla. Std. Jury Instr. (Crim.) 13.1. In many cases, the offense that a defendant intends to commit when entering the dwelling is rather obvious. But this case demonstrates that when the intent to commit an offense is the central issue, the first option is the better practice. The instructions used in this case, which followed the judge's instruction during voir dire that the jury should decide whether the case was "worth it," were not sufficient to assure that the jury made a

---

[3]The supreme court made several amendments to the standard jury instruction for burglary in 2013. See In re. Std. Jury Instr. in Crim. Cases—Report No. 2012-01, 109 So. 3d 721 (Fla. 2013). One of the changes was to list the option of specified offenses first. The court explained that the change was intended "to specify the crime alleged throughout the instruction, other than burglary or trespass, that the defendant intended to commit." Id.

decision based on the law when deciding whether Mr. Morgan intended to commit an offense at the point when he entered the property.

## IV.  TWO ADDITIONAL CONCERNS

Finally, there are two remaining issues that we briefly discuss but do not need to resolve in light of our mandate for a new trial.

### A.  *Proof of Criminal Mischief*

Criminal mischief is a crime in the nature of vandalism.  See Stinnett v. State, 935 So. 2d 632, 634 (Fla. 2d DCA 2006) (explaining the elements for criminal mischief and that "[t]o be guilty of this crime[,] the defendant must specifically intend to damage or destroy the property of another").  It requires proof that property is destroyed "willfully and maliciously."  § 806.13(1)(a).  The property at issue in this case is the front door to the trailer.  There is no question that it was damaged during the standoff.  But there was no direct evidence that Mr. Morgan intended to damage the door, much less that he acted with malice to do so.  The family slammed the door on his arm and foot and then placed six hundred pounds of pressure on the door.  Maybe Mr. Morgan caused or contributed to this damage, but it is very questionable that the circumstantial evidence in this case established the offense of criminal mischief.  However, Mr. Morgan's attorney did not even move for judgment of acquittal for the failure to prove the necessary intent for this offense.  Criminal mischief was presented to the jury as a charged offense and, somewhat illogically, as one of the possible offenses that Mr. Morgan intended to commit upon entering the dwelling.

**B.  *The Sentencing***

After the jury convicted Mr. Morgan of both offenses as charged, the trial court conducted a sentencing hearing.  Mr. Morgan's scoresheet totaled 29.2 points, and he was eligible for a nonstate prison sanction for the burglary.  See § 921.0024(2), Fla. Stat. (2013).  The trial court sentenced Mr. Morgan to sixty days' imprisonment for criminal mischief and to the maximum of fifteen years' imprisonment for the burglary.  See §§ 810.02(3), 775.082(3)(d).

Mr. Morgan argues that the trial court committed fundamental error when it explained why it was imposing the fifteen-year sentence.  At the sentencing hearing, the trial judge noted that the granddaughter in the mobile home was similar in age to his own child and explained: "I can't imagine my child sitting up and seeing somebody standing at their door like that.  That's the reason I'm doing the fifteen years."  Cf. Barnhill v. State, 140 So. 3d 1055, 1061 (Fla. 2d DCA 2014) (explaining that "[w]here a trial judge permits his emotions to guide him away from th[e] principle" that "[t]he very foundation of our system of justice mandates that judges be completely neutral and impartial," the appellate court must reverse).  Our reversal of the judgment for burglary allows us to treat this issue as moot.

Affirmed in part, reversed in part, and remanded.

SLEET and BADALAMENTI, JJ., Concur.