**Edward D. FISHER and Loraine Rodriguez–Fisher, Appellants,**

**v.**

**NORTH HILLS PASSAVANT HOSPITAL, and Dr. Mariano Villasenor, Appellees.**

Superior Court of Pennsylvania.

Argued April 4, 2001.

Filed Aug. 1, 2001.

Reargument Denied Oct. 4, 2001.

Anthony P. Picadio, Pittsburgh, for appellants.

Michael A. Cohen, Pittsburgh, for appellees.

Before DEL SOLE, President Judge, EAKIN and BROSKY, JJ.

DEL SOLE, President Judge.

¶ 1 This is an appeal from the judgment entered following a defense verdict. Finding merit to the claim that Appellants should have been permitted to question a

witness to expose her bias, we reverse and award a new trial.

¶ 2 Appellants, Mr. and Mrs. Fisher, sought damages based upon allegations that Mr. Fisher received inadequate care during his stay at North Hills Passavant Hospital's (the Hospital's) emergency room.[1]

¶ 3 The trial court recounted certain facts related to the case:

There was no genuine factual issue in his case that the Plaintiff-patient was a paraplegic who was at risk to develop decubitus ulcers if either he was not provided with a Clinitron bed or otherwise turned at regular and frequent intervals to prevent the development of the ulcers, among other methods commonly used in such cases to prevent ulcers. There was also no genuine issue at trial that the Plaintiff-patient was not provided with any of the beds or devices used to relieve pressure and the attendant formation of ulcers, or that the patient notes failed to show that he had been turned. These facts, taken together with expert testimony as to the standard of care in such cases, was sufficient to submit the case of a jury.

Trial Court Opinion at 2.

¶ 4 Appellants presented further evidence that Mr. Fisher spent 9½ hours at the Hospital before being transported to West Penn Hospital. At West Penn Hospital, two decubitus ulcers were found on Mr. Fisher. Appellants offered evidence that the ulcer on Mr. Fisher's right trochanter did not heal and worsened to a point that two separate surgeries were required. The matter was submitted to a jury which found in favor of the Hospital. Thereafter, Appellants filed a motion for post-trial relief raising three issues, which are also the subjects of the instant appeal.

---

1. Appellants voluntarily discontinued their     claim against Dr. Villasenor prior to trial.

These issues each concern trial court rulings which disallowed evidence designed to inform the jury that a nurse, Ms. Witt, employed by the Hospital had been suspended for three days following complaints regarding Mr. Fisher's care.

¶ 5 Specifically, Appellants challenge the exclusion of evidence of an incident report, titled "Warning Notice," and an accompanying memorandum which informed the nurse that she was suspended for three days. Appellants also claim the court improperly precluded them from offering testimonial evidence regarding the nurse's suspension. Finally they assert that they should have been permitted to question a witness regarding a conversation between a supervising nurse and Mr. Fisher's doctor relating to complaints about Mr. Fisher's care and the resulting suspension of a staff nurse.

¶ 6 The trial court ruled that the evidence sought to be admitted was of low probative value which, under the circumstances of the case, was outweighed by the risk of unfair prejudice. The court dismissed Appellants' claims that the exhibit sought to be admitted was a business record and that the statements were admissible as admissions.[2]

■ ¶ 7 The question of whether evidence is relevant and, therefore, admissible is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion. *Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 839 (Pa.Super.1999). It is appropriate for a court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. *Curran v. Stradley*, 361 Pa.Super. 17, 521 A.2d 451 (1987). "Evidence is prejudicial not where it merely hurts a party's case, but where it tends to fix a decision which has an improper basis in the minds of the jury." *Id.* at 459.

■ ¶ 8 We agree with the trial court's assessment regarding the admission of the incident report and memorandum. The report warns the employee of "unsatisfactory conduct." Under a section captioned "DETAILS OF INFRACTION" it provides, "customer/patient service deficiencies see attached memo." There is a check next to the section which states that it is the second warning notice within the past year. The attached memo provides that it is issued as a result of a "preliminary investigation" "initiated by a recent complaint" concerning Mr. Fisher's "treatment." It states that the complaint was related "directly to your method of interacting and inability to fulfill both the patient and the family's needs." It also recounts that "Mrs. Fisher relayed inappropriate remarks made by you concerning the availability and charge for a Clinitron bed." It further provides that the Hospital "will proceed to investigate the nursing care rendered to this patient during your suspension."

¶ 9 From our reading of these documents we find no fault in the trial court's conclusion that the evidentiary value of these documents is outweighed by their potentially prejudicial nature. They were issued following a complaint made by Mrs. Fisher and after only a preliminary investigation was conducted. The actual inves-

---

**2.** The court also ruled that it believed the evidence was not barred under the "peer review" doctrine as the Hospital suggested, but that, in view of its finding the evidence inadmissible on other grounds, it was not necessary to reach this issue. We likewise do not consider the application of the Peer Review Protection Act, 63 P.S. § 425.1–425.4, based on our ruling that the trial court correctly precluded Appellants from offering evidence of the report or statements contained therein.

tigation of the matter was to continue during Ms. Witt's suspension. Further the "Warning Notice" and the memo speak in vague terms and do not specifically identify the nature of the deficient care provided by Ms. Witt. The memo refers to "inappropriate remarks" made by Ms. Witt and her "method of interacting" with the patient and his family. It does not provide the details related to the specific care of Mr. Fisher which would support Appellants' claims. Further, the prejudicial nature of this information is evident. Therefore the trial court was within its discretion is disallowing the admission of this exhibit.

¶ 10 Appellants also sought the admission of evidence relating to the investigation of Ms. Witt and her resulting three-day suspension. At trial Appellants' counsel was permitted to ask Ms. Witt if she learned that a complaint was made about her conduct by Mrs. Fisher. She responded affirmatively. The court did not permit any further questioning regarding Ms. Witt's discipline. Appellants' counsel argued to the court that this information was sought to establish Ms. Witt's bias. He stated: "I'm sure she harbors a very deep resentment to Loraine Fisher as a result of this.... The jury is entitled to know she has reason to dislike Ms. Fisher, and she has reason to slant her testimony. It goes to the bias." N.T., 10/1–8/98, at 377–78.

¶ 11 We agree. Mr. Fisher testified that he "begged" the nursing staff to turn him. He stated "I couldn't turn myself. I was afraid to at that angle." *Id.* at 123–24. He testified that it would have been "impossible" for him to turn himself, *id.*, and any response to his requests for repositioning was "in the negative." *Id.* at 143. When asked "did you ever attempt to reposition yourself," Mr. Fisher responded, "No. I couldn't." *Id.* at 145.

¶ 12 In contrast, when Ms. Witt was specifically asked whether she saw "the patient repositioning himself," she replied, "Yes." *Id.* at 368. She described to the jury her observation: "He had good upper body strength, and the bed rails were up; and he used the bed rails, and he reached down and repositioned his legs." *Id.* at 368–69. Ms. Witt also recounted that Mr. Fisher was laying on his right side at one point when she checked on him, but that she later saw him transfer onto his back. *Id.* at 371. She further offered testimony that she repositioned Mr. Fisher once onto his left side. She testified "I helped him shift his hips after he turned over, to the side rail." *Id.* at 372.

¶ 13 The care afforded Mr. Fisher during his stay in the emergency room of the hospital was of critical importance. Ms. Witt directly contradicted Mr. Fisher's statements about such care, specifically about the staff's efforts to reposition him to avoid the development of a decubitus ulcer. The jury was placed in the position of making a credibility determination; therefore, it was imperative for the jury to learn of Ms. Witt's potential bias. The fact that Ms. Witt was suspended as a result of the Fishers' complaints was relevant to establish such bias.

¶ 14 It is appropriate for a witness to be cross-examined as to any matter tending to show interest or bias. *Commonwealth v. Mullins*, 445 Pa.Super. 583, 665 A.2d 1275, 1277 (1995). Where a credibility determination must be made by the jury, evidence of any such bias becomes critical. *See Commonwealth v. Birch*, 532 Pa. 563, 616 A.2d 977, 978 (1992) (ruling that where prosecution and defense witnesses presented conflicting versions of the facts and the credibility of the prosecution's chief witness was therefore pivotal, the trial court committed reversible error by restricting cross-examination as to that witness' potential bias). Thus, the court erred in refusing to permit Appellant the

opportunity to question Ms. Witt about the results of the Fishers' complaint which culminated in her suspension. This error was not harmless in view of the credibility determination the jury was asked to make.

¶ 15 Appellants also seek review of the trial court's ruling prohibiting them from eliciting testimony about a conversation between an investigating nurse and Appellants' doctor. Appellants sought to establish that the nurse advised the doctor that a Clinitron bed had been ordered but not obtained, that there was no documentation of the patient being turned and that the second shift nurse, Ms. Witt, had been suspended as a result of the Fishers' complaints. Appellants claim these statements are admissible as admissions of a party-opponent. Regardless of the merits of Appellants' position, we find the initial two statements were already admitted as facts at trial as documented by the patient's records. Those records did not dispute that a bed was ordered but never received, and that the patient's charts did not document that he had ever been turned while in the emergency room. The last statement referring to Ms. Witt's suspension, we have already determined should have come into evidence during the cross-examination of Ms. Witt to show her bias.

¶ 16 Based upon our conclusion that the trial court abused its discretion by its decision to preclude testimony regarding Ms. Witt's suspension as evidence of her potential bias, we reverse and award a new trial.

¶ 17 Judgment reversed. Case remanded for new trial. Jurisdiction relinquished.

¶ 18 Dissenting Statement filed by Eakin, J.

## DISSENTING STATEMENT BY EAKIN, J.:

¶ 1 While the majority certainly expresses rightful concern about the evidentiary rulings of the trial court, I cannot find them to have been an abuse of discretion.

As such, I must respectfully note my dissent.