718 So.2d 806 (1997)
Kenneth M. PIERCE, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 93-1302.
District Court of Appeal of Florida, Fourth District.
May 7, 1997.
*807 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General, Tallahassee, and Joan Fowler, Senior Assistant Attorney General, and James J. Carney, Assistant Attorney General, West Palm Beach, for Appellee/Cross-Appellant.

UPON REMAND FROM THE SUPREME COURT
BROWN, LUCY C., Associate Judge.
Pursuant to the mandate of the Florida Supreme Court quashing our March 13, 1996, opinion, we now issue this opinion affirming in part Kenneth Pierce's conviction and sentence, and remand for resentencing. See Pierce v. State, 671 So.2d 186 (Fla. 4th DCA), quashed, 686 So.2d 572 (Fla.1996).
On the evening of June 23, 1992, three children walking home through a residential neighborhood in Dania, Florida, were hit by a pickup truck, resulting in the death of the six-year-old child and serious injuries to the two older children. The vehicle fled the scene without stopping. A jury found Appellant guilty of vehicular homicide/leaving the scene of an accident involving death as to the six-year-old child; leaving the scene of an accident involving injury as to the two other children; driving while his license was suspended or revoked and causing death; and two counts of tampering with physical evidence. Appellant was convicted and sentenced to a total of sixty years in prison.
During the trial, a computer-generated animation illustrating the lead traffic homicide investigator's reconstruction of the accident was published to the jury as a demonstrative exhibit. The admissibility of this exhibit presents us with an issue addressed by no appellate court in Florida and by few in other jurisdictions. For reasons set forth below, we find the trial court did not abuse its discretion in permitting the jury to view the computer-generated accident reconstruction animation.
Before trial, the State filed a notice of intent to offer a computer animation of its expert's accident reconstruction. A pretrial hearing concerning admissibility was held in which the State presented three expert witnesses. Detective Bjorndale-Hull, an expert in accident reconstruction, testified that her use of metal tapes and a wheel was reasonably relied upon by accident reconstruction experts in the field. In addition, the AUTOCAD computer program Bjorndale-Hull used was established as accepted in the engineering field as one of the leading CAD (computer-aided design) programs in the world. Finally, Detective Bjorndale-Hull's measurements were drawn directly onto a computer, such that they were input with no human contamination of her measurements.
Second, the State presented Detective Babcock, an accident reconstruction expert, who testified that the data he used was of a type reasonably relied upon by experts in the field of accident reconstruction in formulating opinions as to how motor vehicle accidents occur. Babcock supervised every aspect of the animation from inception. His testimony established that the computer animation fairly and accurately reflected his opinion of how the accident occurred. The computer animation was thus established to be a visualization of Babcock's opinion as to how the accident occurred.
The third witness presented by the State was Jack Suchocki, a computer animation expert, who explained that computer animation consists of individual pictures shown in a *808 rapid sequence to indicate motion. He testified that the two-dimensional drawings entered directly onto AUTOCAD were then directly transferred into three-dimensional drawings, thus eliminating the possibility of human error in the translation. Suchocki testified the animation was a fair and accurate representation of what it purported to depict and that the data, information, and evidence utilized was of a type reasonably relied upon by experts in the field of forensic animation.
The State then proffered the computer animation as a demonstrative exhibit to help Detective Babcock explain his opinion to the jury and also as substantive evidence. The trial court ruled the computer animation admissible as a demonstrative exhibit only. As a preliminary fact, pursuant to section 90.105, Florida Statutes (1995) (substantively identical to 1991 version), the trial court found that the original source data, the basis of the State's computer animation, was "reasonably trustworthy and reliable." Noting the issue to be one of first impression, the trial court determined that the proffered computer animation was "merely a device or means to express an expert's opinion." Additionally, the trial judge concluded that in this context, the video exhibit was a new form of expression, not a scientific or experimental test (such as a DNA test or a blood-spattering analysis) and therefore was not subject to the test of Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923). Thus, the animation was permitted to be used during the expert's testimony at trial for the purpose of aiding the jurors in understanding the complex issues and illustrating the opinions of the expert witness, Detective Babcock. However, because it was ruled inadmissible as substantive evidence, it was not permitted to be taken to the jury room during deliberations.

ADMISSIBILITY OF COMPUTER ANIMATION
Computer animations have been used in the courtroom by civil litigators for reconstructing accidents, including automobile and truck accidents, aircraft collisions, construction equipment accidents, and industrial accidents, as well as in patent litigation. See State v. Pierce: Will Florida Courts Ride the Wave of the Future and Allow Computer Animations in Criminal Trials? 19 Nova L.Rev. 371, 373-77 (1994)(citing David W. Muir, Debunking the Myths about Computer Animation, in Securities Litigation 1992, at 591, 596-97 (PLI Litig. & Admin. Practice Course Handbook Series No. 444)). As demonstrative aids to illustrate and explain testimony of witnesses to the fact finder, such exhibits have been useful.
In the realm of substantive scientific evidence, computers have been used to supply missing information for the purpose of proving a material fact in dispute. In the substantive evidence context, unlike the case at bar, the expert uses the computer not simply to illustrate an expert opinion, but to perform calculations and obtain results which form the basis for the expert opinion. See generally Kathleen M. O'Connor, Computer Animations in the Courtroom: Get with the Program, 67 Fla. B.J., Nov. 1993, at 20. Several cases have been decided in other jurisdictions that deal with the admissibility of computer animations as substantive scientific evidence. The Frye requirement that scientific evidence be admitted only if derived from principles and procedures that have achieved general acceptance in the scientific field to which they belong has been applied to computer animations introduced as substantive evidence. See Starr v. Campos, 134 Ariz. 254, 655 P.2d 794 (App.1982); see also Schaeffer v. General Motors Corp., 372 Mass. 171, 360 N.E.2d 1062 (1977).
Because the computer animation in the instant case was admitted solely as an illustration of Detective Babcock's opinion of how the accident occurred, we do not now decide the standards applicable to computer animations introduced as substantive evidence. The trial court, following a lengthy pretrial hearing, determined that the demonstrative exhibit was not subject to the Frye analysis. We agree and now turn to address the precise issue before us: Whether the trial court abused its discretion in permitting the computer generated accident reconstruction animation to be shown to this jury as a demonstrative exhibit.
*809 In one of the few reported cases addressing this issue, a New York trial court allowed a criminal defendant to introduce a computer animation to illustrate his expert's view of how a fatal crash occurred. Finding, as we have, the Frye test inapplicable, the court stated:
A computer is not a gimmick and the court should not be shy about its use, when proper. Computers are simply mechanical tools___receiving information and acting on instructions at lightning speed. When the results are useful, they should be accepted, when confusing, they should be rejected. What is important is that the presentation be relevant ... that it fairly and accurately reflect the oral testimony offered and that it be an aid to the jury's understanding of the issue.
People v. McHugh, 124 Misc.2d 559, 476 N.Y.S.2d 721, 722 (Sup.Ct.1984). Thus, in admitting the animation as a demonstrative exhibit only, the McHugh court merely required defense counsel to establish "the proper ground work and qualify the expert." Id.
Under Florida law, in order to admit a demonstrative exhibit, illustrating an expert's opinion, such as a computer animation, the proponent must establish the foundation requirements necessary to introduce the expert opinion. Specifically, (1) the opinion evidence must be helpful to the trier of fact; (2) the witness must be qualified as an expert; (3) the opinion evidence must be applied to evidence offered at trial; and (4) pursuant to section 90.403, Florida Statutes, the evidence, although technically relevant, must not present a substantial danger of unfair prejudice that outweighs its probative value. Kruse v. State, 483 So.2d 1383, 1384 (Fla. 4th DCA 1986), cause dismissed, 507 So.2d 588 (Fla.1987).
Further, the proponent must establish that the facts or data on which the expert relied in forming the opinion expressed by the computer animation are of a type reasonably relied upon by experts in the subject area. The facts or data need not themselves be admissible in evidence. § 90.704, Fla. Stat. (1995)(substantively identical to 1991 version). The reasonableness of the expert's reliance upon the facts and data may be questioned in cross-examination. See First Fed. Sav. & Loan Ass'n v. Wylie, 46 So.2d 396, 400 (Fla.1950).
Finally, the computer animation must be a fair and accurate depiction of that which it purports to be. This is, of course, the same foundation that must be established to admit any pictorial representation, be it videotape, motion picture, or photograph. Paramore v. State, 229 So.2d 855 (Fla.1969), vacated as to sentence only, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972)(videotape admission); Grant v. State, 171 So.2d 361 (Fla.1965), cert. denied, 384 U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966)(motion picture).
All preliminary facts constituting the foundation for admissibility of evidence must be proven to the court only by a preponderance of the evidence, even in a criminal case. Charles W. Ehrhardt, Florida Evidence § 105.1 (1996). In the case at bar, the trial court made appropriate findings of preliminary facts that were supported by the evidence adduced at the pretrial hearing. Detective Babcock was found to be qualified as an expert. His opinion as to how the accident occurred was in fact applied to evidence offered at trial, and the trial court found that the data relied on by the expert to form his opinion was of a type reasonably relied upon by experts in the field. Further, the trial court specifically found the computer animation was a fair and accurate depiction of the expert's opinion as to how the accident occurred and found that the opinion, as well as the computer animation, would be helpful to the jury in understanding the issues in the case. Our review of the record has revealed no abuse of the trial court's discretion in these preliminary findings.
Furthermore, our review of the computer animation videotape in the context of this record convinces us that the trial court appropriately exercised its discretion in its balancing analysis pursuant to section 90.403, Florida Statutes (1995)(substantively identical to 1991 version). See Sims v. Brown, 574 So.2d 131, 133 (Fla.1991)(trial court has broad discretion in determining whether evidence *810 should be admitted when there is a section 90.403 objection). Although evidence in this case indicated a bloody scene with screaming victims, the computer animation videotape demonstrated no blood and replicated no sound. Further, the mannequins used in the computer animation videotape depicted no facial expressions.
Moreover, we find there was no undue emphasis placed upon the computer animation videotape, which was shown to the jury for a total of approximately six minutes during the course of an eleven-day trial. The judge appropriately explained to the jury that the videotape was being used only to illustrate the expert's opinion. Cross-examination was permitted, and the record demonstrates it was made clear to the jury that if the information entered into the computer was inaccurate, then the computer animation itself was inaccurate.
Accordingly, we find no error in the trial court's decision permitting the computer generated animation to be shown to the jury as a demonstrative exhibit illustrating Detective Babcock's reconstruction of the motor vehicle accident.

ADJUDICATION AND SENTENCING ISSUES
Appellant was adjudicated guilty and sentenced on all five counts as follows:
COUNT I: Vehicular Homicide/Leaving the Scene of an Accident Involving Death: thirty years Florida State Prison as habitual felony offender (as to the six-year-old victim).
COUNT II: Leaving the Scene of an Accident: ten years Florida State Prison as habitual felony offender, consecutive to count I (as to the two older children).
COUNT III: Driving with a Suspended or Revoked Drivers License Involving Death/Serious Injury: ten years Florida State Prison as habitual felony offender consecutive to counts I & II.
COUNT IV: Tampering with Evidence; and
COUNT V: Tampering with Evidence: ten years Florida State Prison as habitual felony offender, counts IV & V to be served concurrently, but consecutive to counts I, II & III. Appellant received credit for time served and was ordered to pay restitution to the victims.
Of Appellant's numerous challenges to his adjudication and sentencing, we find merit in only two, as set forth below.
Appellant correctly asserts, on grounds of double jeopardy, that he may be convicted and sentenced on only one homicide-related charge because only one death occurred. We do not find that Appellant waived his claim of double jeopardy. See Novaton v. State, 634 So.2d 607 (Fla.1994).
Appellant was convicted of violating both section 322.34(3), Florida Statutes (1991)(renumbered as § 322.34(3)(b), Fla. Stat. (1995)) (driving with suspended license and causing death), and also section 782.071, Florida Statutes (1991)(substantively identical to 1995 version) (vehicular homicide). In State v. Cooper, 634 So.2d 1074 (Fla.1994), our supreme court held that a defendant could not be convicted of both the offense of DUI manslaughter and the offense of driving with license suspended and carelessly or negligently causing the death of another human being. The Cooper court cited an earlier supreme court decision, State v. Chapman, 625 So.2d 838 (Fla.1993), wherein the court held that a single death could not support convictions of DUI manslaughter and vehicular homicide. Cooper, 634 So.2d at 1074; see Houser v. State, 474 So.2d 1193, 1196 (Fla. 1985) (an offender may not be punished for DWI manslaughter and vehicular homicide).
Appellant cannot be convicted of violating both sections 322.34(3) and 782.071 based on a single death. Accordingly, on this issue, we reverse and remand for resentencing.
Further, Appellant cannot legally receive consecutive enhanced sentences for crimes emanating from one criminal episode. Although the State argues that this issue has not been preserved, sentencing errors resulting in an illegal sentence may be corrected at any time, even after being erroneously affirmed. Bedford v. State, 633 So.2d 13, 14 (Fla.1994). Moreover, any sentence that exceeds the maximum allowed by statute is fundamental error that can be raised at any *811 time. Stephens v. State, 627 So.2d 543 (Fla. 2d DCA 1993).
A trial court cannot both enhance a defendant's sentence as a habitual offender and also make each of the enhanced habitual offender sentences consecutive. Hale v. State, 630 So.2d 521, 525 (Fla.1993)(enhanced habitual offender sentences for possession and sale of same piece of cocaine could not be consecutively served), cert. denied, 513 U.S. 1066, 115 S.Ct. 686, 130 L.Ed.2d 617 (1994). The legislative intent is satisfied when the maximum for each offense is increased. Id. at 524. This rule was repeated in Brooks v. State, 630 So.2d 527 (Fla.1993), wherein the supreme court held that consecutive enhanced sentences could not be imposed under the habitual violent felony offender statute for crimes arising out of a single criminal episode.
Upon finding that Appellant was convicted of two felonies and had not received a pardon for either, and based upon Appellant's criminal history, the trial court ordered enhanced sentences for Appellant in each instance as a habitual offender.
However, the court also sentenced Appellant on counts I, II, and III, each to run consecutive to each other. As set forth above, this issue is moot as to count III. Nevertheless, it was error to consecutively sentence Pierce as to counts I, II, and III because each occurred on June 23, 1992, all arose out of one criminal episode, and each was enhanced by habitual offender status.
As to counts IV and V, wherein Appellant was found guilty of two different incidents of tampering with evidence, where the two tampering incidents occurred at a time different from the event resulting in counts I, II, and III, it was not error to sentence Appellant with concurrent terms for counts IV and V and to have these concurrent terms run consecutive to counts I, II, and III.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
STONE and WARNER, JJ., concur.