[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10641
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 28, 2011
JOHN LEY
CLERK

D.C. Docket No. 5:06-cv-00048-SPM-MD

JAVIER RAMOS,

Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 28, 2011)

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Javier Ramos, a Florida state prisoner, appeals, through counsel, the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court granted a certificate of appealability ("COA") as to the following five claims: whether Ramos's counsel, Richmond[1], was ineffective for failing to (1) object to the state medical examiner's testimony as scientifically unreliable, speculative, and beyond the medial examiner's expertise; (2) object to the use of the state's computer-generated animation on the basis that the state did not lay a proper foundation as required by *Pierce v. State*, 718 So. 2d 806, 809 (Fla. Dist. Ct. App. 1997); (3) hire a forensic expert to rebut the medical examiner's testimony; (4) file a motion to suppress Ramos's post-arrest statement where counsel testified that he strategically decided not to file such a motion; and (5) object to the state's closing argument as being inflammatory and expressing an opinion as to Ramos's guilt. We expanded the COA to consider whether the district court erroneously found that Ramos had not exhausted his claims that the trial court violated his right to due process when it: (1) admitted the medical examiner's testimony, (2) admitted the state's computer-generated animation, (3)

---

[1]Ramos had two trial attorneys, Harold and Jim Richmond. For ease of discussion, we refer to trial counsel simply as "Richmond."

denied his motion for a judgment of acquittal, and (4) denied his request for an "independent acts" jury instruction.

## BACKGROUND

Javier Ramos and Joe Clark shared an apartment in Panama City, Florida in late summer of 1994. Ramos then moved to Miami but returned to Panama City on October 2, 1994. Before he left Miami, he told a dancer at the exotic dance club he managed that he had to take care of people in Panama City. When she asked him if he planned to murder anyone, he said he would if he had to.

While in Panama City, Ramos gave Clark a .22 caliber pistol. Ramos owned a .38 Beretta. They entered a nightclub called the Show-N-Tail to speak with Chris McConnell, the manager. It is unclear what happened after they entered the club—but four men were dead when the shooting ended including Tony Lands, a maintenance man who was in the club to collect his paycheck. There were sixteen gunshot wounds among the four men, and each had been shot twice in the head. Ramos drove Clark to their old apartment and then continued on to Miami. Ramos was arrested shortly after he arrived in Miami.

Ramos asked for a lawyer in Miami and was not questioned. He was transported to Panama City in a small plane with police officers from Panama City. During the ride he was told that Clark cooperated with the police. At

3

Panama City headquarters, he again asked for a lawyer but was advised it would take some time for one to be appointed, so he gave a statement. His statement indicated that Clark shot two of the men suddenly and without warning. He said that Clark then unexpectedly shot McConnell. Ramos also stated he shot Lands in self-defense because Lands appeared suddenly, and he saw Lands move his hands as if he were reaching for a gun (which Ramos knew Lands carried). Clark and Ramos were charged with four counts of first degree murder. In a joint trial with two separate juries, Clark was acquitted on all counts and Ramos was convicted of first degree murder of Lands, second degree murder of McConnell, and manslaughter of the other two men. Ramos was sentenced to life imprisonment for Lands's murder and lengthy concurrent sentences for the other homicides. Ramos's conviction and sentences were affirmed without opinion on direct appeal. Ramos's motion for post-conviction relief was denied, and the denial was affirmed on appeal without opinion. *Ramos v. State*, No. 04-0672 (Fla. Dist. Ct. App. Sept. 27, 2005). Ramos filed this timely petition for a writ of habeas corpus which the district court denied. This appeal followed.

## DISCUSSION

We review the district court's denial of a habeas petition *de novo* and factual findings for clear error. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th

4

Cir. 2005). Mixed questions of law and fact, like an ineffective assistance of counsel claim, are reviewed *de novo*. *Id.* Under 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or,
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[C]learly established Federal law" refers to the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 1172 (2003) *citing Williams v. Taylor*, 529 U.S. 362, 412 (2000). We review a petitioner's claim *de novo* where the state court "made an unreasonable factual determination." *Jones v. Walker*, 540 F.3d 1277, 1288 (11th Cir. 2008) (en banc).

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

In habeas petitions, state court and district court findings of historical fact are subject to the presumption of correctness unless clearly erroneous. *Collier v.*

5

*Turpin* 177 F.3d 1184, 1198 (11th Cir. 1999). Ineffective assistance of counsel is a mixed question of law and fact, so we review the district court's determinations *de novo*. *McNair*, 416 F.3d at 1297. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687– 88, 104 S. Ct. 2052, 2064 (1984).

In challenging the sufficiency of counsel's performance, habeas petitioners must overcome a strong presumption that counsel was adequate and exercised reasonable professional judgment when making significant decisions. *Id.* at 690, 104 S. Ct. at 2066; *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (citation omitted). Counsel will not be found ineffective if the approach taken could be considered sound trial strategy. *Strickland*, 466 U.S. at 1314, 104 S. Ct. at 2065. Courts must approach counsel's challenged conduct from the counsel's perspective at the time. *Id.* at 689, 104 S. Ct. at 2065.

The prejudice prong requires a showing of reasonable probability that the outcome would have been different but for counsel's errors. *Id.* at 694, 104 S. Ct. at 2068. For guilt phase claims of ineffective assistance, it is not enough to show that the error had a "conceivable effect on the outcome"; the error must undermine

confidence in the outcome and create a reasonable doubt as to whether, without the challenged error,  the fact finder would have found reasonable doubt.  *Id.* at 695, 104 S. Ct. at 2067-68.  To make this determination, we review "the totality of the evidence before the judge or jury."  *Id.* at 693, 104 S. Ct. at 2069.

To succeed on an ineffective assistance of counsel claim, the defendant must prove both prongs of the test; a reviewing court need not address the performance prong of the test if the petitioner cannot meet the prejudice prong and *vice versa*.  *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

A.

Ramos first claims that Richmond's representation was ineffective due to his failure to object to the medical examiner's testimony as scientifically unreliable, speculative, and beyond the medial examiner's expertise.  The medical examiner testified as to the position of the victims' bodies when they were shot.

The district court found that the state court's ruling on this claim was unreasonable, so we review it *de novo*.  28 U.S.C. § 2254(d); *Jones v. Walker*, 540 F.3d at 1288 n.5.  We begin our analysis with the prejudice prong of the *Strickland* test.  Ramos can only prevail if he can prove that Richmond's proper objection could have reasonably led to the creation of reasonable doubt in the mind of the fact finder.

7

The decision to admit expert testimony in Florida is left to the trial court's discretion and reversed only on a finding of clear error. *Terry v. State*, 668 So. 2d 954, 960 (Fla. 1996). The court must make two factual determinations prior to certification of an expert. The court must decide first whether the subject matter is proper for expert testimony and, second, whether the witness is adequately qualified to express an opinion in the matter. *Id.* (citations omitted). Experts may express opinions on matters in which they have expertise when it is in response to facts disclosed at or before trial. *Id.*

Ramos argues that the medical examiner's use of conditional language in explaining her theory ("either...or," "may have," "could have") rendered her testimony unhelpful to the jury. This language presents multiple possibilities for body location to the jury, which the jury was free to weigh. Juries may weigh the evidence presented by witnesses, including expert witnesses, based on credibility. This language does not render the state court's finding of helpfulness clearly erroneous.

Ramos next argues that the medical examiner did not have the requisite expertise to testify as she did. Here, the trial court reviewed the medical examiner's record and made a determination that her education, knowledge, skill, experience, and training qualified her as a forensic pathologist capable of

8

expressing opinions on the position of the bodies. This determination is not clearly erroneous. *See Terry*, 668 So. 2d at 960–61 (stating that while there may be a dispute over the weight to be given to a medical examiner's testimony regarding a victim's body position before death, admissibility of such an expert to testify is within the trial court's discretion and does not represent a clear showing of error.).

As a result, Ramos is unable to convince us that, had trial counsel objected to the medical examiner's testimony or expertise, the testimony would have been disallowed. Absent this showing, he does not meet the prejudice prong of the *Strickland* test and is therefore not entitled to relief on this ground.

Additionally, while the medical examiner's testimony damaged Ramos's self-defense theory, even without the testimony of the medical examiner there was sufficient evidence of Ramos's guilt on which a reasonable jury could base a guilty conviction. Prior to leaving Miami, Ramos had a conversation with a dancer at his nightclub who testified that he told her he had to take care of people in Panama City and would kill if necessary. Ramos testified at trial that he shot Tony Lands first in the chest, and then again after Lands's legs buckled in self-defense. Since Ramos testified, the jury was free to disbelieve his self-defense argument and to use his testimony as substantive evidence that he shot Lands with

9

premeditation. *United States v. Williamson*, 339 F.3d 1295, 1301 n.14 (11th Cir. 2003) ("[The defendant] testified in her own defense . . . [so] the jury was free to disbelieve her and use her testimony as substantive evidence proving her guilt."). Based on this evidence, there is no reasonable probability that the jury would have found that Ramos did not shoot Lands with premeditation absent the medical examiner's testimony. Accordingly, Ramos is not entitled to relief on this ground.

B.

Ramos next contends that Richmond was ineffective because he failed to object to the computer-generated animation showing the position of Lands's body when he was shot for failure to lay a proper foundation, as required by *Pierce v. State*, 718 So. 2d 806 (Fla. Dist. Ct. App. 1997).[2] This animation was prepared using the medical examiner's testimony. The district court found that the state court did not properly address the issue raised, so we review the *Strickland* claim *de novo*.

---

[2]*Pierce* stated that for a court to admit a computer animation, the proponent must establish that "(1) the opinion evidence [is] helpful to the trier of fact; (2) the witness [is] qualified as an expert; (3) the opinion evidence [is] applied to evidence offered at trial; and (4)... the evidence, although technically relevant, [does] not present a substantial danger of unfair prejudice that outweighs its probative value." 718 So. 2d at 809 (citation omitted). The proponent must also "establish that the facts or data on which the expert relied in forming the opinion expressed by the computer animation are of a type reasonably relied upon by experts in the subject area", and that "the computer animation [is] a fair and accurate depiction of that which it purports to be." *Id.*

*Pierce* is not instructive here. It was decided two years after Ramos's trial, and the deciding court recognized that the issue was addressed by "no appellate court in Florida and by few in other jurisdictions." *Pierce*, 718 So. 2d at 807. Attorneys are not required to make arguments based on predictions of how law will develop. *Spaziano v. Singletary* 36 F.3d 1028, 1039 (11th Cir. 1994) (citations and quotation marks omitted). Given this background, Ramos has not proven that even had the objection been made, the trial court would have excluded the animation.

Because Ramos fails to prove that his case was prejudiced by Richmond's failure to object to the evidence, Ramos is not entitled to habeas relief on this ground.

## C.

Ramos next argues that Richmond was ineffective for failing to hire a forensic expert. The state court applied *Strickland* to this issue and found that no grant of extra time or hiring of other forensic experts would have changed the outcome of the case.

It is uncontested that the state disclosed the medical examiner who would be called to testify at trial as a possible witness less than one month before trial. Through no fault of his own, Richmond was unable to depose this witness and

11

learn that her opinions were contrary to the original medical examiner's opinions until four days before the trial began. Richmond moved for continuances for authorization to retain an expert and to prepare a computer animation. His motions and continuances were denied, and it does not appear from the record before us that his motion to retain an expert and to prepare a computer animation was granted.

Richmond's performance is not deficient merely because it is not perfect. To prove the performance prong of *Strickland*, Ramos must prove that no other competent lawyer would have failed to anticipate the state's tardy disclosure and the court's refusal to grant a continuance. He has not done so. Therefore, the state court's ruling was consistent with clearly established federal law and reasonably determined that Richmond's failure to hire a forensic expert was dictated by time and cost restrictions, not by deficient performance. Ramos is not entitled to relief on this ground.

D.

Ramos argues that Richmond's decision not to file a motion to suppress his confession constituted ineffective assistance of counsel. The state court applied *Strickland* and determined that Richmond's decision not to file a motion to suppress to avoid testimony by the codefendant and to pursue a self-defense claim

12

was a reasonable strategic choice and did not constitute ineffective assistance of counsel. Whether a choice is a tactical one is a question of fact, entitled to a presumption of correctness. *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998). The reasonableness of such a choice is a question of law and subject to *de novo* review. *Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003). And, as we have stated, habeas relief is only granted when the trial court's decision is contrary to or an objectively unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

The state court found that Richmond's decision not to file the motion was tactical. When Richmond made this decision, he had at least two of Ramos's codefendant's statements, he had deposed the firearms expert, he had spent twelve hours researching the issue and reviewing Ramos's statement, and he had determined that Ramos's position as to who committed the murders was contrary to his codefendant's position on the matter. With this information, Richmond made the decision not to file a motion to suppress. Upon review of the record, we cannot say that the state court's application of *Strickland* was unreasonable in concluding that Richmond made a reasonable tactical decision not to file the motion to suppress. Therefore, Ramos is not entitled to relief on this ground.

E.

Ramos's final *Strickland* claim is based on Richmond's failure to object to the prosecutor's closing arguments.  The state court held that the prosecutor's statements were not improper.  As stated above, habeas relief is only granted when the trial court's decision is contrary to or an objectively unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1).

In evaluating prosecutorial indiscretion, the relevant question is "whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (citation and quotation marks omitted).  A lawyer may not make "[i]mproper suggestions, insinuations, [or] assertions calculated to mislead or inflame the jury's passions" in his closing argument.  *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009), *cert. denied*, 131 S. Ct. 413 (2010).  However, improper remarks are harmless error if there is "sufficient independent evidence of guilt" in the record.  *Lopez*, 590 F.3d at 1256. (citation and quotation marks omitted).

At various times during the closing argument, the prosecutor stated that Ramos "shaded his testimony" and "just wants to con you."  He also described the defense's case strategy as like a "jigsaw puzzle" where you have to take the pieces

14

and "fit them in backwards and upside down and corner wise, etc."  Finally, the

prosecutor stated that Ramos was "guilty, guilty, guilty."

We cannot say that these statements "infected the trial with unfairness."

*Darden*, 477 U.S. at 181, 106 S. Ct. at 2471.  Because Ramos testified, the

prosecutor could comment on his testimony.  Even without these statements, there

was sufficient evidence to uphold the guilty verdict.[3]  Thus, the state court's

application of federal law was neither contrary to clearly stated federal law nor

unreasonable, so Ramos is not entitled to relief on this claim.

## II. EXHAUSTION

Findings of exhaustion by the district court in § 2254 cases are mixed

questions of law and fact, and we review them *de novo*.  *Mauk v. Lanier*, 484 F.3d

1352, 1357 n.3 (11th Cir. 2007).

For a federal court to hear a habeas claim resulting from a state conviction,

the petitioner must first exhaust the remedies available in his state's courts.  28

U.S.C. § 2254(b)(1)(A).  This requirement is not satisfied if the prisoner fails to

raise a federal claim in the state court, *see, e.g.*, *Bailey v. Nagle*, 172 F.3d 1299,

_____

[3]At the time of closing argument, there was (1) testimony that Ramos told an employee he was going to Panama City to deal with some people, killing them if necessary, (2) Ramos's testimony on the stand that he supplied his codefendant with a weapon used in the shooting and that he shot one of the victims in self-defense, (3) evidence of Ramos's ownership of one of the two guns recovered by the police, and (4) identification evidence of Ramos at the scene of the crime immediately after the murders occurred.

1303 (11th Cir. 1999) (per curiam), or fails to raise a claim in terms of federal law, *see, e.g.*, *Gray v. Netherland*, 518 U.S. 152, 162–63, 116 S. Ct. 2074, 2081 (1996) ("[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."). A claim is only exhausted if it is fairly presented to the state courts, meaning that the same claim must be brought before both the state and federal courts and presented in such a way "that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (citation and quotation marks omitted).

In *Baldwin v. Reese*, the Supreme Court stated that citing the federal source of law in conjunction with the state law claim, or citing a case deciding such a claim on federal grounds, or simply labeling the claim federal is sufficient to fairly present a claim. 541 U.S. 27, 32, 124 S. Ct. 1347, 1351 (2004). In *McNair*, we applied this standard by looking at the underlying purpose of exhaustion—to "afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *McNair*, 416 F.3d at 1302 (citation and quotation marks omitted). Given this purpose, we held that the *Baldwin* language discussing adequate means to identify federal issues to the

16

lower state courts was dicta and that a federal issue requires more than a sprinkling of federal citations, and more than "some makeshift needles in the haystack of the state court record." *McNair*, 416 F.3d at 1303.

Ramos claims that his federal due process rights were violated when the court (1) admitted the medical examiner's testimony, (2) admitted the state's computer generated animation, (3) denied his motion for a judgment of acquittal, and (4) denied his request for an "independent acts" jury instruction.

First, Ramos claims denial of due process in the admission of the testimony of the medical examiner into evidence. In his brief to the District Court of Appeal of Florida, Ramos made one passing reference to federal law. He stated that "this evidence was so devastatingly prejudicial that its introduction violated his Florida and federal constitutional rights to due process and a fair trial and the error was fundamental and, thus, must be considered by this court even absent objection." Nowhere in his argument does he argue federal standards, nor does he include references to federal case law. While other Circuits have interpreted *Baldwin* differently, as Ramos discusses in his brief, we have required more than "needles in the haystack." *McNair*, 416 F.3d at 1303. *But see Jackson v. Edwards*, 404 F.3d 612, 618–22 (2d Cir. 2005) (focusing on the degree of similarity of the state law claims and federal law claims in deciding exhaustion for the purpose of

17

habeas).  In *McNair*, we found that a citation to a single federal case in a string of cases, and a passing reference in the conclusion of an argument to various amendments of the Constitution did not fairly present the federal issue to the state court, barring federal habeas review for lack of exhaustion in the state courts.  416 F.3d at 1303-04.

Similarly, here Ramos mentions his federal constitutional rights only in an opening paragraph.  This reference did not fairly present the issue to the state court, and so it has not been exhausted.  Our holding in *McNair* does not depend on whether the state and federal standards for each issue were identical, but rather whether the state court was on notice of the federal claim.  *Id.* at 1304.  Here, the state court was not on notice of the due process claim in his objection to the admission of evidence, so the issue was not properly exhausted in the state court.

Second, Ramos argues that the admission of the computer-generated animation violated his due process rights.  In his appellate brief in the state court, he mentioned that the admission of the animation violated his "constitutional right to a fair trial" and due process rights.  Again, his legal argument is confined to state law and state standards.  Applying *McNair*, Ramos's brief did not put the state court on notice of the federal issue, and so he did not exhaust the federal question in state court and we therefore cannot grant the relief he seeks.

18

Next, Ramos argues that the state did not sufficiently prove his guilt as to the premeditation of the murder of Lands, and so his motion for acquittal was improperly denied. Ramos did not address any federal law in this argument, except for a passing reference to the Constitution. He states "[t]he [circumstantial evidence] rule implicates a defendant's Florida and federal constitutional rights to due process." These passing references to the Constitution are akin to the "needles in the haystack" that we explicitly sought to avoid in our interpretation of *Baldwin*. *McNair*, 416 F.3d at 1303. This reference did not properly put the state court on notice of the federal issue, and so we find that his claim has not been exhausted by the state courts.

Finally, Ramos argues that the trial court erred in denying his request for an "independent acts" jury instruction. As with the other three issues, Ramos makes no reference to federal law other than in the conclusion of his law section, stating that the failure to issue such an instruction denies "Florida and federal constitutional rights to due process and a fair trial." Here again, Ramos failed to properly exhaust the federal issue in the state court, and so we cannot grant relief.

**CONCLUSION**

Ramos's counsel was not constitutionally ineffective, and Ramos failed to fully exhaust the federal issues in the state courts.

19

**AFFIRMED.**